MEDLIN v. HAMBRIGHT et al.    (No. 9392.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 27, 1920.)

1. Chattel mortgages &#9752;&#8594;229(3) — Evidence held to show mortgagee authorized mortgagor to sell cotton.

In suit for the amount of promissory notes and to foreclose chattel mortgage lien on mules, automobile, and cotton raised by one defendant, and against the other defendant for conversion of the cotton, evidence *held* to show that plaintiff mortgagee authorized defendant mortgagor to sell the cotton and to receive the money therefor.

2. Chattel mortgages &#9752;&#8594;136 — Mortgagee may waive lien.

A mortgagee may by his words or acts waive his lien on the property covered.

Appeal from Denton County Court; E. I. Key, Judge.

Suit by B. T. Hambright and others against William Calvert and Jack Medlin. From a judgment for plaintiff, defendant Medlin appeals. Reversed and rendered for defendant Medlin, but undisturbed in so far as against defendant Calvert.

Joe S. Gambill and Hopkins & Jackson, all of Denton, for appellant.

Owsley & Owsley and R. H. Hopkins, all of Denton, for appellees.

BUCK, J. This suit was filed in the county court of Denton county by plaintiff B. T. Hambright against William Calvert, for the amount of three promissory notes, and for a foreclosure of a chattel mortgage lien on two mules, one Ford automobile and the second, third, sixth, and seventh bales of cotton, and

seed, raised during the year 1918 by Calvert on the A. G. Peterson farm near Roanoke, and against Jack Medlin for the conversion of said cotton. The defendant Medlin answered by a general demurrer, a special demurrer, general denial, and specially pleaded that defendant Calvert had mortgaged to said Medlin, to secure a promissory note, certain live stock, including the two mules against which plaintiff claimed a mortgage, and all the cotton crop raised on the Peterson farm, except the first five bales raised thereon. He further pleaded that a balance of the original note was still due, and prayed for a foreclosure of said chattel mortgage lien. He further pleaded that he did purchase three bales of cotton from Calvert in the fall of 1918, but denied that plaintiff had any mortgage thereon; that if plaintiff had ever had a mortgage on said cotton that he had waived the same by specially authorizing the sale of said cotton by Calvert, without notifying defendant Medlin not to pay Calvert the money therefor.

After the evidence had closed, the court instructed the court to find for plaintiff against the defendant Calvert for the full amount sued for, with a foreclosure of the chattel mortgage lien on the automobile, and a foreclosure of a second lien (subject to the lien held by Medlin) on the two mules, and further charged that if the jury should from the evidence find that said Medlin did buy one or more bales of cotton from Calvert on which plaintiff had a mortgage, and the plaintiff had not waived said lien, they would find for plaintiff against said Medlin for the value of said cotton bought by him. He further instructed the jury if plaintiff authorized defendant Calvert to sell the cotton upon which plaintiff held a mortgage that by so doing he waived such mortgage, and in that event they would find for defendant Medlin as to same.

The jury returned a verdict for plaintiff against defendant Calvert in accordance with the instructions of the court, and against defendant Medlin for the three bales of cotton. The court entered judgment accordingly, giving judgment against Medlin for $424.70, the value of said three bales. From this judgment Medlin has appealed.

The first assignment is based upon the asserted claim that the undisputed evidence shows that plaintiff authorized Calvert to sell the cotton to Medlin, and thereby waived his lien. Plaintiff testified:

"The defendant W. M. Calvert and I went to Ft. Worth, where I sold him a Ford automobile, for which the note was given that was sued on in this case. * * * I did tell Mr. Calvert to sell the cotton so I could get my money. Of course I expected him to pay me. I had the utmost confidence in him, but I wanted the cotton sold, for I wanted to get my money. Some time before the defendant Calvert sold the cotton to defendant Medlin I was with Henry Baxter on a Liberty Loan Drive, and saw Mr. Calvert at his home, and did tell him I thought cotton was going down, and he had better sell it and settle up, but of course, I expected him to get my money out of it. When Mr. Calvert and I was going down the street in Roanoke on the day that Mr. Medlin bought the cotton, I saw John Gerlach, Medlin, and others standing in the street, and I suggested that a Mr. Gerlach was a cotton buyer, and that Mr. Calvert could sell it to him. I wanted him to sell the cotton so I could get my money. When I was talking to the defendant Jack Medlin about the cotton, and I think others, I did talk to him about buying it. I always wanted him to sell it so I could get my money. No, I did not say for him not to pay Calvert, but I did say it was my purpose for him to sell it so I could get my money for the note, or get it paid, and I did not expect him to sell it and keep the money. He has not paid me the note. After he had sold the cotton to Mr. Medlin, Medlin came in the bank at Roanoke, where I had my office. I think he came to see the banker about something. I asked him, or he told me, I am not sure which, that he had bought Calvert's cotton, and I told him that I would get out and see Mr. Calvert about it. Calvert told me the three bales of cotton were my cotton; that is, the cotton covered by my mortgage."

Calvert testified that plaintiff had often told him to sell the cotton covered by the mortgage, as well as other cotton he had; that he would always tell him to sell it so plaintiff could get his money. He recited the incident of Messrs. Hambright and Baxter coming to his home, when plaintiff told him to sell the cotton so he could get his money; also the incident when he and plaintiff were on the street of Roanoke and plaintiff pointed to Mr. Gerlach and stated that Gerlach was a cotton buyer and would buy the cotton; that he went with Mr. Gerlach and Mr. Medlin to the cotton yard, where the cotton was, and Mr. Medlin bought the cotton; that theretofore he had sold one bale upon which Mr. Hambright had a mortgage, and that the latter knew it; that plaintiff had a mortgage on the second, third, sixth, and seventh bales of cotton to be raised on the Peterson farm; that at this time he had the second, third, and fourth bales raised on the Peterson farm and one bale raised on the Brooks farm; that plaintiff had a mortgage on only two bales of the four, the second and third, and one of these bales was the fourth bale raised on the Peterson farm, one the bale raised on the Brooks farm; that on one occasion plaintiff told him to sell the cotton and bring him the money.

Henry Baxter testified to hearing plaintiff tell defendant Calvert to sell the cotton and settle up. Gerlach testified that he needed the cotton bought from Calvert to fill out an order, and that after plaintiff had referred Calvert to him, he, Medlin, and Calvert went down to the cotton yard, and Medlin bought the cotton; that the four bales of cotton amounted to $424.70, and he paid Medlin therefor.

Defendant Jack Medlin testified: That plaintiff had talked to him several times about Calvert's owing him, and asked Medlin to buy Calvert's cotton. That he never did tell him not to pay Calvert for the cotton. That after buying the cotton from Calvert, he turned over the tickets for the cotton to Mr. Gerlach, and as it was customary to accompany the checks given for cotton with the tickets, showing weights and price, and as he had given the checks to Mr. Calvert and the tickets to Mr. Gerlach, he went to the bank, to explain matters. There he saw plaintiff, who asked him if he had bought Calvert's cotton. He told him he had. Thereupon plaintiff said he would go out and hunt up Calvert and have a settlement with him, and left the bank. That plaintiff did not ask witness for the money or claim that Calvert did not have the right to sell the cotton. That when he was at the bank, and saw plaintiff, the checks given to Calvert had not been presented for payment, and if plaintiff had raised any objection to the sale as it was made, he could have stopped the payment on them.

[1, 2] We are of the opinion that the evidence shows unmistakably that plaintiff authorized defendant Calvert to sell the cotton and to receive the money therefor. We are further of the opinion that only two bales of cotton were sold in the transaction on which plaintiff had any mortgage. That a mortgagee may by his words or acts waive his lien upon the property covered is well established by the authorities. Rusk Co. Lumber Co. v. Meyer et al., 126 S. W. 317, Stinson v. Sneed, 163 S. W. 989; Carr v. Brawley, 34 Okl. 500, 125 Pac. 1131, 43 L. R. A. (N. S.) 302, and notes.

In our judgment, under the evidence, the trial court should have instructed the jury to find for defendant Medlin on plaintiff's plea of conversion.

The judgment below, in so far as the controversy is between plaintiff and defendant Medlin, is hereby reversed, and rendered for Medlin. The judgment against defendant Calvert, from which no appeal is taken, is left undisturbed.

Reversed and rendered in part.

Undisturbed in part.