## MAGNOLIA PETROLEUM CO. et al. v. HOGG. (No. 2788.)*

(Court of Civil Appeals of Texas. Texarkana. July 6, 1923. Rehearing Denied Oct. 4, 1923.)

**1. Chattel mortgages ⬤⟶219 — Purchaser of mortgaged property with mortgagee's consent takes property free from lien.**

One who purchases mortgaged property with the consent of the mortgagee takes a good title, since mortgagee, by agreeing that the mortgagor may sell the property, waives the lien.

**2. Mines and minerals ⬤⟶115—Seller of royalty interest who retained lien to secure payment of purchase price, held to have waived lien.**

Seller of royalty interest, entitling owner to a certain portion of oil produced on certain lands, who retained a vendor's lien to secure payment of purchase price, by signing a contract for the sale of the oil, specifying the portion of the price to be paid to the buyer of the royalty interest without stating that he had a lien thereon, waived his lien, notwithstanding subsequent notice to buyer of oil that he had such a lien.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by F. D. Hogg against the Magnolia Petroleum Company and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

W. H. Francis and A. S. Hardwicke, both of Dallas, and C. L. Morgan and Ike A. Wynn, both of Fort Worth, for appellants.

J. A. Templeton, of Fort Worth, for appellee.

---

HODGES, J. In June, 1921, the appellee filed this suit against the Magnolia Petroleum Company, Leo Bloch, trustee, R. H. Kimsey and R. H. Kimsey, Jr., Phillip B. Hopkins, and Ike A. Wynn as defendants. The purpose of the suit was to recover damages for the conversion of a quantity of oil on which the plaintiff Hogg claimed to have a lien.

The material facts, as set forth in the plaintiff's original petition, and as disclosed by the evidence, are as follows: In 1918 Hogg owned a tract of land, and in February of that year executed and delivered to W. H. and D. W. Powers a mineral lease. Sometime later the Powers assigned their interest to the Sinclair Oil & Gas Company. The lease contained the usual contracts and covenants authorizing the lessees to explore for oil and gas, and in the event oil was found to pay the lessor a one-eighth royalty. Oil was found in paying quantities, and according to its terms the lease continued as long as the wells continued to produce. In April, 1919, Hogg sold and conveyed to R. H. Kimsey and R. H. Kimsey, Jr., an undivided $1/32$ interest in his royalty. The consideration was $40,000, evidenced by four promissory notes of $10,000 each. The notes were signed and acknowledged by the Kimseys, and in each vendor's lien was retained to secure payment of the purchase price. After that sale Hogg and the Kimseys executed and delivered to the Magnolia Petroleum Company the following instrument, designated a "division order":

"To Magnolia Petroleum Co.:

"The undersigned certify and guarantee that they are the legal owners of Sinclair Gulf Oil Company wells No. 1 and upon Hogg Lease Farm more particularly described as follows: [Here follows description.]

"To F. D. Hogg, $1/32$ R. I., Desdemona, Texas.

"To R. H. Kimsey, $1/32$ R. I., Ft. Worth, Texas, 1401 Summit Ave.

"The undersigned (referred to as 'owners' or 'sellers') hereby authorize Magnolia Petroleum Company to connect with the above wells, and receive all oil produced therefrom during the continuance of this contract, they to be paid for said oil according to their respective and several interests, as above set forth, same to be received and purchased from said parties severally in the proportions named, subject to the following condition:

"1. The oil run hereunder shall become the property of Magnolia Petroleum Company, and title to same shall pass to it as soon as the same is received into its custody.

"2. The oil received under this division order shall be paid for by the purchaser (Magnolia Petroleum Company) to the party or parties entitled thereto according to the division of interests shown above, at the price posted by Magnolia Petroleum Company for the same kind and quality of oil in the particular field in which it is received on the day on which it is received by purchaser into its custody. Settlements therefor shall be made semimonthly. For the amount due on account of the oil received during the first fifteen (15) days of each calendar month, payment shall be made on or before the 25th day of such month; and for the amount due on account of the oil received during the balance of such calendar month, payment shall be made on or before the 10th day of the next succeeding month. These payments may be made by paying the party or parties entitled thereto in person or by mailing Magnolia Petroleum Company's check therefor to the addresses of said parties respectively as given above, or by deposit of the sum due to the credit of said parties respectively at —— Bank at ——."

Prior to the execution of this division order the Magnolia Petroleum Company had been paying to Hogg his $1/8$ royalty interest. After the execution of that order the Magnolia Petroleum Company paid $1/32$ to Hogg, and the other $1/32$ to Kimsey. It does not appear who was entitled to the remainder of the $1/8$ interest formerly owned by Hogg. In May, 1919, the Kimseys conveyed their interest to one Leo Bloch as trustee, and thereafter the Kimsey interest was paid to Bloch. Two of the purchase-money notes held by Hogg were paid; the third and the fourth were not paid at maturity. Upon default in the payment of the third and fourth notes Hogg notified the Magnolia Petroleum Company that he claimed a lien on the interest theretofore paid to Bloch, by virtue of the contract of sale to the Kimseys. After the receipt of that notice the Magnolia Petroleum Company refused to make further payments to Bloch until it was indemnified against Hogg's claim. Thereupon the Kimseys executed an indemnity bond, with Hopkins and Wynn as sureties. Upon the delivery of this bond to the Magnolia Petroleum Company payments to Bloch were renewed, and during the months of August and September following Bloch received from the Magnolia Petroleum Company $1,106.50 for oil delivered after that notice. Some time later Hogg filed a suit in the district court of Tarrant county against the Kimseys, Bloch, and the Sinclair Oil & Gas Company, seeking to recover a judgment on the two unpaid purchase-money notes and to foreclose his vendor's lien on the interest formerly conveyed to Kimsey. He secured a judgment in that suit on the 17th of May, 1921, granting the relief prayed for. This suit is for the oil delivered to Bloch after the Magnolia Petroleum Company was notified by Hogg that he claimed a lien upon the interest sold to the Kimseys, and before the rendition of the judgment in the suit on the purchase-money notes.

The case was tried before the court without a jury, and upon the facts stated he rendered a judgment against the Magnolia Petroleum Company for the value of the oil delivered after notice of Hogg's claim, and in favor of the Magnolia Petroleum Company over against Wynn upon the bond of indemnity heretofore referred to. Other parties

were dismissed from the suit. The judgment, based upon the .legal conclusion that Hogg held a lien of which the Magnolia Petroleum Company had notice, rendered the company liable to Hogg for the damages he thereby sustained.

[1, 2] It may be conceded that the subject-matter of the contract between Hogg and Kimsey was such that a valid lien could be and was created in favor of Hogg on the interest sold to Kimsey. But it does not follow that the Magnolia Petroleum Company is liable for having converted a portion of that interest. It is well established that one who purchases mortgaged property with the consent of the mortgagee takes a good title, and cannot be held responsible for a conversion. When the mortgagee agrees that the mortgagor may sell the mortgaged property the lien is legally waived. Rusk County Lbr. Co. v. Meyer (Tex. Civ. App.) 126 S. W. 317; Medlin v. Hambright (Tex. Civ. App.) 225 S. W. 577; Carr v. Brawley, 34 Okl. 500, 125 Pac. 1131, 43 L. R. A. (N. S.) 302, and numerous cases cited in the notes. The division order previously referred to was a contract for the sale of the oil, in which all the parties thereto were interested. It expressly stipulated that the Magnolia Petroleum Company might buy the oil owned by Kimsey and pay the purchase price to Kimsey. It is not denied that this contract was in force at the time the oil alleged to have been converted was received and paid for by the Magnolia Petroleum Company. The only fact that can be relied on to alter the legal effect of that instrument is the notice given by Hogg to the Magnolia Petroleum Company that he held a lien on Kimsey's interest. That notice, however, could not change the terms of the contract. By signing that division order Hogg put it beyond his power to recall the permission he thereby gave for the sale and purchase of the incumbered property. Paragraph 4 of that contract stipulated that it should continue for 30 days, and until terminated upon notice given in accordance with its terms. The Magnolia Petroleum Company might terminate it by giving 10 days notice of its purpose to discontinue. Either Hogg or Kimsey might terminate it by giving a similar notice to the Magnolia Petroleum Company. But it was expressly stipulated that such notice given by one of these parties should operate only on his interest and without affecting the interest of the other parties. A notice, therefore, from Hogg could not relieve the Magnolia Petroleum Company from its obligation to buy oil from Kimsey and to pay Kimsey the purchase price. The only way that company could escape from its contract with Kimsey was to terminate the agreement by giving written notice to Kimsey, or to both Hogg and Kimsey.

Many other interesting questions are raised in the brief of counsel for appellant, but their discussion is rendered unnecessary by the conclusions which we have reached. We are of the opinion that the admitted facts show a sale and purchase of the incumbered interest, made with the consent of the.mortgagee; and whatever lien he might have held was waived as a matter of law. He therefore has no right to hold the Magnolia Petroleum Company responsible for a conversion.

The judgment will therefore be reversed, and judgment here rendered in favor of the appellants.