**HARDING et al. v. SAN SABA NAT. BANK.**
**(No. 7293.)**

Court of Civil Appeals of Texas. Austin. Jan. 18, 1929.

Rehearing Denied Jan. 30, 1929.

Oxford & Johnson, of Stephenville, for appellants.

N. C. Walker, of San Saba, for appellee.

McCLENDON, C. J. The bank (appellee) sued Crain as principal and Johnson and Sloan as sureties on two promissory notes, and Harding and Evans for converting certain pecans which they had purchased from Crain, and upon which the bank claimed a chattel mortgage to secure the notes. Johnson and Sloan admitted plaintiff's cause of action, but asked that the judgment be first satisfied through the liability of Harding and Evans as conversioners of the mortgaged property. Harding and Evans (appellants) defended on two grounds: (1) That the mortgage was void because of indefiniteness of description of the mortgaged property; and (2) because, at the time the mortgage was executed, it was agreed between the bank and Crain that the latter might market the pecans, accounting to the bank for the proceeds, which agreement it pleaded as estoppel against the bank to assert its mortgage lien.

The trial was to a jury upon one special issue, whether such agreement was made, and upon a negative jury finding judgment was entered against the first three defendants upon the note and against Harding and Evans for the amount of the note, including 10 per cent. interest and attorney's fees. Harding and Evans have appealed.

Appellants contend that a peremptory instruction in their favor should have been given upon two grounds: (1) That the description in the mortgage was insufficient to create a lien; and (2) that their plea of estoppel was established as a matter of law.

Upon the first ground no authorities are cited, and in the oral argument appellants' counsel virtually conceded that the description, which reads as follows, was sufficient:

"All pecans bought by me with the proceeds of this note, crop of 1926, on three different places near Stephenville, four miles west in Erath County, Texas."

We hold the description sufficient under the following general principle announced in 11 C. J. 457:

"It is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property conveyed. This rule is based on the maxim, 'That is certain, which is capable of being made certain.'"

Texas authorities cited in 4 Tex. S. W. Digest, Key-Note No. 47, under Chattel Mortgages, in principle support this holding.

Upon the second ground the evidence

is conflicting upon the issue whether there was an express agreement that Crain might market the pecans. Appellee's loan agent and cashier, who conducted the negotiations with Crain, denied making any express agreement. He did testify, however, as follows:

"Now, at the time that I took this mortgage on the pecans, I expected Mr. Crain to market the pecans—I expected that the pecans would pay for this note. It was agreeable with me for him to sell the pecans, provided the money came into the bank. I did not expect to take charge of those pecans and market them myself—sell them myself. It is a fact that my petition shows that I let him have the money for the purpose of purchasing and marketing the pecans. I didn't say anything about the marketing; I gave him the money to purchase the pecans. It was agreeable with us for him to sell those pecans, provided the bank got the money. It was all right for him to sell those pecans, provided that he would then turn in the proceeds of the sale of the pecans into the bank, to be credited on that note. * * *

"Yes, sir, it was agreeable with us and all right with us for Mr. Crain to sell those pecans, provided he turned the proceeds of the sale of the pecans over to us to be credited on those notes, we expected the pecans to pay the notes. It was all right, provided we got the money. * * *

"My deposition was taken in this case, and it is a fact that I was asked the question, 'You expected Mr. Crain, the defendant, to sell those pecans and pay you the money—and it was your intention that he should sell the pecans and that you should receive the proceeds of the sale?' And my answer to that was, 'Yes, sir'; that is true. We expected to get the money from the sale of the pecans. I was, also, asked, 'It would have been all right with you for Mr. Crain to have sold the pecans, if he had paid you the notes?' And my answer to that question was, 'Yes, sir.' We would have been entirely satisfied and I was asked this question in substance, that it was a custom with my bank in taking a mortgage of this kind to expect the mortgagor to sell and market the products and pay to the bank the proceeds of the sale and my answer to that was, 'Yes, sir.' That was my answer and that is the usual custom. * * *

"I was asked if it was the custom for the man who owns the pecans or the mortgagor to sell the pecans and pay over the proceeds of the sale, and I answered that question, 'Yes.' That is true. Paragraph 9, of that paper you have in your hand was read to me at the time that deposition was taken, and I was then asked the question as to whether that money was used for the purpose of purchasing and marketing pecans standing and growing on a place situated about four miles from the place mentioned in that paragraph and I stated that it was—that he borrowed that money to buy pecans with. * * *

"Mr. Crain was never given our written consent to sell those pecans to any one. We never gave any one written consent. Harding and Evans did not call me up and request a release of this mortgage; they did not call me up with reference to this. * * *

"We had a mortgage and we expected the proceeds to be brought right in on the mortgage. As to whether or not that was what we were looking to; I was looking to the stuff. I was looking to the proceeds of the sale of the pecans—looking to the money the pecans brought to pay the note."

Appellee contends that, even if this evidence is sufficient to establish a waiver of or estoppel to assert the lien, there was no pleading of such defense; the only pleading being an express agreement authorizing the sale.

Plaintiff's petition alleged that the money was advanced to Crain "for the purpose of purchasing and marketing the pecans standing and growing on the three places." Appellants pleaded that, at the time the mortgage was executed, the bank "through its loan agent and cashier agreed with the said defendant, Crain, that he might market the pecans, which was to be purchased and marketed by him, and that he might pay the proceeds thereof to the said bank." It was further alleged that Crain did market the pecans in accordance with this agreement, and that appellants bought them in the open market, without any knowledge of the mortgage.

"To market" has been defined judicially and by lexicographers as: "To buy or sell; * * * to sell in a market." The pleading of appellee that it was its purpose in loaning the money to enable Crain to market the pecans, and of appellants of an agreement to that effect, we think sufficient to raise the issue as to the understanding of the parties, whether that understanding be evidenced by an express agreement or an agreement implied from circumstances surrounding the transaction. The expression "purchasing and marketing" in appellee's petition can have no other meaning than purchasing and selling in the open market. It clearly appears from the allegations of appellee's petition and of appellants' answer, and from the undisputed testimony of appellee's agent in the transaction, that Crain was to market the pecans, that is, sell them in the open market and account to appellee for the proceeds. Under the following authorities, this constituted waiver of the bank's lien as against any one purchasing from Crain in the open market. Lumber Co. v. Meyer (Tex. Civ. App.) 126 S. W. 317; Melasky v. Jarrell, 62 Tex. Civ. App. 337, 131 S. W. 856; Medlin v. Hambright (Tex. Civ. App.) 225 S. W. 578; Magnolia Co. v. Hogg (Tex. Civ. App.) 254 S. W. 582; Woodson v. Westbrook, 272 S. W. 821; Smith v. Miller (Tex. Civ. App.) 300 S. W. 953.

The trial court's judgment, in so far as it is against the appellants, is reversed, and

judgment is here rendered in their favor. In other respects, the trial court's judgment is undisturbed.

Reversed and rendered.