

# THE ATTORNEY GENERAL
## OF TEXAS

Grover Sellers

~~WILL WILSON~~

ATTORNEY GENERAL.

AUSTIN 11. TEXAS

*911b, 1a (1)(c) (1944)*

Railroad Commission
of Texas
Austin, Texas

Gentlemen:

Opinion No. O-5851
Re: Whether specified transportation of
petroleum products is exempt from regula-
tions under the Motor Carrier Act by rea-
son of Section la (1)(c) of Article 911b,
Vernon's Annotated Civil Statutes.

You have inquired whether the transportation of one
Manski for the Magnolia Petroleum Company is subject to regula-
tions under the Texas Motor Carrier Act or whether he is exempt
by reason of Section la(1)(c) of Article 911b, Vernon's Anno-
tated Civil Statutes, Acts of the 47th Legislature, page 463,
H.B. 25.

Your Chief Law Enforcement Officer for the Motor Car-
rier Division, Mr. Hughes, has agreed to the following amended
statement of facts as more truly representing the situation con-
fronting the Commission than that contained in your opinion re-
quest:

## FACTS

The Magnolia Petroleum Company owns bulk storage faci-
lities at McGregor, Gatesville, Belton and Waco.

The Company has a contract with one Manski of McGregor,
McLennan County. In this contract, termed "Wholesale Commission
Agents Contract," he is called the Company's "Commission Agent
at McGregor and points designated as tributaries thereto, which
are subject to change by Company on thirty days' notice to Agent,
as follows," naming eleven small towns situated on radii out of
McGregor at varying distances up to some twenty miles, and situa-
ted in two or three counties.

An amended paragraph adds the following:

"la. Also, in addition, Agent is appointed for the
distribution of Company's petroleum products as its Agent
and for and with Company as the single principal in the
following limited territory:

"From Ft. Worth to Waco, to McGregor, to Belton and to
Gatesville; and from Waco to McGregor.

"For the purposes of the paragraph next above, while

Company shall be the single principal of Agent, nothing herein shall constitute Agent the single, exclusive or sole Agent of Company in the performance of said distribution."

The duties of the Agent consist of the care of stock and equipment, soliciting and carrying on business under direction of the district manager, making deliveries, collecting accounts, making reports, unloading cars and performing such other services as may be required of him.

The Agent must see that all receptacles are correctly gauged and free from leaks, as the Company will not be responsible for any loss from leakages or incorrectness of measurements.

The Agent assumes all liability for loss and damage sustained by the Company or third persons resulting from acts of the Agent or his employees who are exclusive servants of the Agent.

The Agent must remit all funds collected to the Company; he must sell at prices fixed by the Company; he may sell on credit only when expressly authorized; he may not cash personal checks and is liable to the Company if loss results therefrom.

By "rider" to the contract the Agent assumes all liability for loss of cash, checks, etc., resulting from theft, accident or loss for any cause.

No freight allowance will be made the Agent on replenishment of stock unless he can show that the depletion of stock was not due to the Agent's failure to make reports and place orders for replenishments.

The contract of agency cannot be assigned.

The Company has the option to purchase any service stations that the Agent may acquire.

Looking beyond the printed contract, we find that the Company has an employee at Waco and storage facilities there to handle its distribution for that territory. Other employees of the Company have the duty of securing orders for large quantities of gasoline for the Army bases near Waco.  When Manski transports gasoline from the company refinery at Fort Worth to its storage facilities at Waco, or to the Army bases under these conditions he performs a service that is limited to transportation.  He does not solicit the sale, make the sale, nor collect for said sale.  His duty is confined to receiving the fuel into his tank trucks at Fort Worth and delivering it to the destination.  This will be referred to as his "Waco-Army Bases Service."

In such cases he is compensated at a different rate per gallon from that obtaining where he stores the fuel at McGregor and distributes it out from there by obtaining orders from independently owned filling stations, making deliveries and collecting the purchase price.  This will be referred to as the "Commission Agent Service."

Manski owns and operates several tank trucks, paying the drivers himself and being under contract to the Company to pay for all damages which he or the public may sustain by reason of any accident for which he or his employees are responsible. The Company pays social security insurance on Manski calling him an employee.

## LIMITATION OF THE QUESTION

This opinion will be limited to a consideration of whether the transportation by the Agent, Manski, and his drivers where he performs a purely transportation service, is subject to regulation by the Railroad Commission under the Motor Carrier Act.

## ORIGINAL STATUTES

As originally written the Texas Motor Carrier Act, article 911b, made motor carriers subject to the regulation of the Commission.  Section 1(g) of that Act defines a "Motor Carrier" as one operating a motor vehicle used in transporting property for compensation or hire where in the course of such transportation a highway between two or more incorporated cities is traversed.

Section 1(h) defines a "Contract Carrier" as being a motor carrier transporting property for hire other than as a common carrier.

## NEW WAY LUMBER COMPANY v. SMITH

In 1936, in the case of New Way Lumber Company v. Smith, 96 S.W.(2d) 282, the Texas Supreme Court held that a lumber company was acting as a motor carrier and was transporting for hire where it delivered its lumber to its customers in different towns, the Company having one price where the customer called or came to the lumber yard to get the lumber and another based on distance from the yard, where the Lumber Company made the delivery.

## AMENDMENT OF 1941

In 1941, Acts of the 47th Legislature, page 463, H.B. No. 25, the Legislature amended the Motor Carrier Act as follows:

"* * *

"Section 1a(1) Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding section shall not be held to include:

"(a) Any person having a regular, separate, fixed, and established place of business, other than a transportation business, where goods, wares, and merchandise are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person in the ordinary course of the mercantile, manufacturing, or processing business, and who, merely incidental to the operation of such business, transports over the highways of this State such goods of which such person is the bona fide owner by means of a motor vehicle of which such person is the bona fide owner; or

"(b) Any person transporting farm implements, livestock, *** or wool and mohair of which such person is the bona fide owner to and from the area of production and to and from the market or place of storage thereof; provided, however, if such person (other than a transportation company) has in his possession under a bona fide consignment contract livestock, * * * under contract as an incident to a separate, fixed, and established business conducted by him the said possession shall be deemed ownership under this Act.

"(c) Where merely incidental to a regular, separate, fixed, and established business, other than a transportation business, the transportation of employees, petroleum products, and incidental supplies used or sold in connection with the wholesale or retail sale of such petroleum products from the refinery or place of production or place of storage to the place of storage or place of sale and distribution to the ultimate consumer, in a motor vehicle owned and used exclusively by the marketer, or refiner, or owned in whole or in part and used exclusively by the bona fide consignee or agent of such single marketer or refiner; as well as where merely incidental to a regular, separate, fixed and established business, other than a transportation business, the transportation of petroleum, employees, material, supplies, and equipment for use in the departments of the petroleum business by the bona fide owner; bona fide consignee or agent as used herein being hereby defined and construed, for the purpose of this Act,

to mean a person under contract with a single principal to distribute petroleum products in a limited territory and only for such single principal;

"* * *

"(2) The term 'person' as used in this Act shall include persons, firms, corporations companies, co-partnerships, or associations or joint stock associations (and their receivers or trustees appointed by any Court whatsoever).

"Section 1b. Any person who transports goods, wares, or merchandise under the circumstances set forth in the foregoing Section 1a so as to be excluded by the terms of said Section from the definition of 'motor carrier' or 'contract carrier' shall be deemed to be a private motor vehicle owner; and such use of the highways by such private motor vehicle owners, as herein defined, shall be construed as use of the highways for the general public and not for the use of such highways for the carrying on the business of transporting property for compensation or hire.'

"* * *"

## "MARKETER"

The party transporting is exempt from classification as a Motor Carrier if he meets, among other criteria, the test that he be a refiner or marketer transporting in his own trucks; since the petroleum company does not own the trucks under consideration, we must look elsewhere in the statutes for an exemption.

Manski is not a refiner so that portion of the statute is inapplicable. Is he a marketer? If he is, since he owns his own trucks, he will be exempt.

Webster defines "Marketer" as one who attends a market to buy or sell; one who carries goods to market.

We do not feel that we would be justified in acceding to the view that "marketer" as here used is synonymous with "carrier." First, because the Legislature throughout this Act repeatedly says that the transportation must be incidental to a business other than a transportation business. And in the second place "marketing" in ordinary usage connotes more than transportation. For example, in its latest catalogue the School of Business Administration of the University of Texas divides its subjects under thirteen major heads, including "Marketing" and

"Transportation and Industry;" under "Marketing" it lists a dozen courses dealing with consumer purchasing, salesmanship, retailing, wholesaling, chain store systems, coöperative chains but not with transportation. Under "Transportation and Industry" are listed transportation courses in air, motor and water transportation. From the Columbia Encyclopedia's compendium on marketing we quote the following:

> "Marketing is promoted by salesmanship and by advertising. Mail-order houses sell by catalogue at retail, especially the rural buyers. Some products are marketed by house to house canvassing. Chain stores eliminate some of the expense of marketing by combining retail sales with wholesale purchases or with manufacturing. Cooperative organizations of consumers and of producers as farmers, seek also to diminish the spread in marketing."

The term "marketing" assumes the existence of trade so buying and selling are necessary incidents to "marketing." 38 C.J. 1258, 1259.

"'To market' has been defined judicially and by lexicographers as 'to buy or sell; * * * to sell in a market.'" Harding v. San Saba National Bank, 13 S.W.(2d) 121, 122.

Insofar as Manski's activities consist solely in transporting from the Company's refinery at Fort Worth and delivering into its storage facilities at Waco where an employee of the Company takes charge and wherever he delivers from the refinery to a purchaser who has dealt directly with the Company and not with or through Manski, the sale not having been solicited nor procured by Manski and he not collecting therefor, his sole duty is that of a carrier.

Such transportation business is regular and substantial and is not occasional, casual, desultory and incidental. Ann 123 A.L.R. 229. We conclude that as to the activities above outlined he does not come within such Section (c) of the amendatory Act.

Counsel for the petroleum company urges that Manski may still come within subsection (c) as a "person under contract with a single principal to distribute petroleum products in a limited territory."

We shall determine

(1) Whether the requirement that transportation must be incidental to a business other than a transportation business applies to a bona fide agent or consignee;

(2) Whether Manski as to his Waco and Army bases operation is a distributor.

## I.

### "BUSINESS OTHER THAN A TRANSPORTATION BUSINESS" APPLICABLE ALSO TO AGENT.

The answer to the first question is made difficult by the fact that subsection (c) is fragmentary within itself and does not fit in with the leading clause of Section 1a(1) as do subsections (a) and (b). Thus:

"Section 1a(1) Provided, however, the term 'motor carrier' and the term 'contract carrier' as defined in the preceding section shall not be held to include:

"(a)  Any person having * * * a * * * business, other than a transportation business, *** and who, merely incidental to the operation of such business,
***

"(b)  Any person transporting farm implements, ***

"(c)  Where merely incidental to a ***business, other than a transportation business, the transportation of *** petroleum products *** in a motor vehicle owned and used exclusively by the marketer or refiner or owned in whole or in part and used exclusively by the bona fide consignee or agent of such a single marketer or refiner***"

This clause does not contain an object to "include" in the first part of Section (1). Structurally it presents no ground for saying that the requirement that transportation must be incidental to a business other than a transportation business applies only to refiners and marketers and not to one under contract as an agent or consignee.

## II.

### DISTRIBUTE

To be exempt from regulation as a motor carrier the agent or consignee must be, among other things, one who is under contract to distribute petroleum products in a limited territory for a single principal. Will transportation alone amount to distribution? Standing alone the word "distribution" may have reference to the physical conveyance of commodities to the consumer or it may refer to "marketing" as defined in this opinion. Reference to the title of the Act shows what the Legislature had in mind. It reads in part:

"AN ACT amending Chapter 277, Acts of the Regular Session of the 42nd Legislature, as heretofore amended

> by adding Section 1a and 1b thereto;***exempting certain persons, firms and corporations transporting under certain circumstances, their own employees and property, <u>or property in which they have an interest as consignee or agent</u>***"

This shows that the purpose of the statute is to exempt under certain conditions persons transporting property "<u>in which they have an interest</u>." A carrier would have an interest because he would have a lien for his charge but carriers are excluded so that cannot be the source of the interest. If Manski were selling on a commission basis as he does out of McGregor, he would have an interest in his commission, but here he has no interest in the commodity which he transports to Waco and the Army bases other than whatever interest such transportation alone may give him. If the Legislature had intended that his interest should be whatever interest he might have as one transporting and no more, the words "in which they have an interest as consignee or agent" would have been mere surplusage, adding nothing. We ought not to adopt a construction which nullifies the language of the Legislature when another construction which gives effect to every word is equally plausible.

In <u>Pazen v. Silver Rod Stores</u>, (N.J.) 18 Atl.(2d) 576, the court said that while the Act under consideration did not define "distribute" it might be taken as granted that a wholesaler handles and distributes the products to retailers and that his act in so doing is coupled with an interest.

We conclude that as used in the statute a contract to transport is not a contract to distribute.

Counsel for the petroleum company is of the opinion that at the time of the passage of the Amendatory Act it was customary for consignees and agents of the petroleum companies to regularly engage in transactions of the Manski to Waco type where their activity was purely that of a carrier and nothing more; that they devoted a substantial part of their efforts to this work, that it was considered a part of the duties of an agent or consignee, just the same as where the transportation was a part of and incidental to marketing transaction carried on by the agent. If this be true, we do not feel that we would be warranted in looking to such a definition when the Legislature has defined the term as it does here. Repeatedly, in the amendment the Legislature specified that the transportation must be merely incidental to a business other than a transportation business, and we find such a requirement in subsection (c) pertaining to the transportation of petroleum products by bona fide agents or consignees.

Such an interpretation of the legislative intent places subsection (c) in a better position to withstand an attack based upon an.alleged insufficiency of its title or of the alleged unreasonableness of the classification.

You are informed that in our opinion Manski's Waco operations do not come within the exemption of Article 911b, Section 1a (1) (c), Vernon's Annotated Civil Statutes.

Yours very truly

ATTCRNEY GENERAL OF TEXAS

By /s/ David W. Heath
David W. Heath, Assistant

APPROVED APR 20, 1944
/s/ Grover Sellers
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:          GWB, CHAIRMAN

DWH:EP:wb