**CARTWRIGHT v. FLATT et al.**

No. 2978.

Court of Civil Appeals of Texas.
Waco.

Nov. 28, 1951.

Wm. Roy Anderson, Cleburne, for appellant.

Walker & Baker, Cleburne, for appellees.

TIREY, Justice.

H. T. Cartwright brought this suit against J. W. Flatt, J. E. Roten and W. E. Henderson. His suit against Flatt was based on the unpaid balance on a promissory note in the principal sum of $1,468.13, executed by Flatt and his wife to him and secured by chattel mortgage on the 1949 cotton crop of Flatt. He sought recovery against Roten and Henderson for conversion of the cotton covered by said chattel mortgage. He did not ask for foreclosure of his mortgage. The court overruled Cartwright's motion for instructed verdict.

The jury in its verdict found substantially (1) that at the time of the execution of the note by Flatt to Cartwright that Cartwright agreed to advance to Flatt a certain sum of money in the future, and (2, 3 and 4) at the time of the execution of the note Flatt was indebted to Cartwright, and that such note was given by Flatt partly for money owed by him to Cartwright, and (5) that Cartwright consented to a sale of the cotton in question. The court overruled Cartwright's motion for judgment non obstante veredicto and granted defendants' motion for judgment on the verdict of the jury and awarded judgment in favor of plaintiff Cartwright against Flatt for the unpaid balance on the note, interest and attorney's fees, and decreed that plaintiff take nothing against defendants Roten and Henderson. Cartwright seasonably filed motion for new trial, which was overruled, and thereafter perfected his appeal.

Appellant has assailed the judgment on what he designates as eight points. Points 3 to 7 inclusive in effect assail Special Issue No. 5 and the jury's answer thereto. Special Issue No. 5 was: "Do you find from a preponderance of the evidence that H. T. Cartwright consented to the sale of the cotton in question," to which the jury answered "Yes." Appellant says that the evidence was insufficient to tender such issue and that it was likewise insufficient to sustain an affirmative answer thereto, and that plaintiff's consent did not constitute a waiver of his mortgage lien or an estoppel to assert his lien in the absence of a finding that such consent was given unconditionally and that it was so communicated to defendants Roten and Henderson, and by reason thereof the court should have granted appellant's motion for judgment non obstante veredicto. A statement is necessary.

Appellant makes no complaint as to the judgment rendered in his favor against Flatt and his only complaint here is that the court failed to render judgment in his behalf against defendants Roten and Henderson. The sole basis of his relief against Roten and Henderson is a suit for conversion of mortgaged cotton. Evidence was tendered to the effect that defendant Flatt had been closely associated with the plaintiff since about 1941. During the year 1949 Flatt subleased on the halves the Bill Roten farm from J. E. Roten, one of the defendants herein. Flatt and his wife and children worked for plaintiff at different times nearly every year during the period from 1941 through 1949. They visited in each other's homes on numerous occasions and were closely associated. Plaintiff had owed Flatt money at different times and on several occasions went on notes for Flatt and later paid them off. In January, 1949, Flatt and his wife executed to plaintiff the note in suit, and also executed a chattel mortgage securing such note covering the 1949 cotton crop on the Bill Roten farm. At that time plaintiff owed about $5,000 to other parties not pertinent here. Plaintiff had already mortgaged all of his equipment to these other parties and the note and mortgage in suit were given by Flatt to plaintiff so that plaintiff could obtain funds to make a down payment on a farm. Evidence was also tendered to the effect that plaintiff assured the Flatts that he, plaintiff, would pay off the note before it was due, and further assured them that the note would never bother them. In September, 1949, Flatt paid to plaintiff $50 from the sale of the first bale of cotton and plaintiff knew that the money came from the sale of the cotton. Throughout the Fall of 1949 it became necessary for Flatt to get pickers to pick the cotton and it was likewise necessary for him to sell the cotton so that he could pay for the picking, and we think it is pertinent here to quote in question and answer form a part of plaintiff's testimony:

"Q. Mr. Cartwright, is Mr. Flatt a man of considerable means? A. Off handed, I wouldn't think so.

"Q. What money was he to pay you this note out of that claim that he owed you? A. What money?

"Q. Yes, sir. A. He was to pay me out of that cotton crop.

"Q. And he was to sell the cotton crop to get the money to pay you, was he not? A. Well, I guess he was. How could he get it, if he didn't. * * *

"Q. Did you know he was gathering his crop over there? A. When?

"Q. During the time he was gathering it? A. Sure. The fact of the business is I made four or five trips to Ft. Worth to get him help to help him get that cotton out so I could get some money, but I never did get it.

"Q. You knew he was gathering his crop and selling it? A. I figured it, but I never did see anything to know it.

"Q. Of course, you were interested in getting your money off your mortgaged cotton, weren't you? A. Sure I was.

"Q. And when you got your first $50.00 off of his cotton, did you ever ask him for more money? A. Well, I made several trips over there to collect.

"Q. Who did you think he was selling it to during that time? A. To Mr. Henderson and Mr. Roten.

"Q. He told you that, didn't he? A. No. He told me that they bought it at the place. * * *

"Q. Didn't you know if you sat by and let Mr. J. W. Flatt sell your mortgaged cotton to Mr. Roten and Mr. Henderson that was going to bring on trouble unless you said something about it and stopped it? A. No, I didn't know it. I figured the boy would pay me when he sold his cotton.

"Q. Mr. Cartwright, what was your understanding with Mr. Flatt about how and when you were going to be paid? A. On this note you mean?

"Q. Yes. A. It was supposed to come out of the cotton. * * *

"Q. How did he know that he was supposed to bring the money to you as soon as he had sold the cotton? A. I told him—the Bank notified him the note was up there for collection, and I wouldn't have to know a word about when he made a deposit there for me, or anybody.

"Q. Mr. Cartwright, did you ever have an understanding with Mr. Flatt as to the details and procedure of when and how he was to pay you that note? A. No, nothing more than out of the cotton, and I told him when I done it, 'Jesse, this is borrowed money, I will have to have my money because I have got to pay it back to the fellow I owe it to.'

"Q. And he was to pay you as soon as the cotton was sold? A. I would take it that way, how would you take it?

"Q. That is the way you and he took it, wasn't it? A. That is the way I took it."

■ It is our view that the foregoing testimony is sufficient to tender the issue that Cartwright gave his consent to Flatt to sell the mortgaged property, and is also sufficient to sustain the jury's affirmative finding thereon.

■ It is well settled in Texas that "If the mortgagee consents to the sale of the mortgaged property, the purchaser takes it free of the lien, and the mortgagee can have neither foreclosure nor damages for conversion." See Oats v. Dublin National Bank, 127 Tex. 2, 90 S.W.2d 824, point 5 on page 827.

■ Plaintiff did no testify that the sale of the cotton was without his consent; nor do we find any facts or circumstances in the record from which the jury could have drawn such inference, if it had been so inclined to find. On the contrary, all of the testimony adduced tenders the issue that there was an understanding between plaintiff Cartwright and defendant Flatt that Flatt was to sell the cotton in the open market and account to Cartwright for the proceeds until Flatt had paid the note. It is our view that the foregoing factual situation constituted a waiver of Cartwright's lien against anyone purchasing the cotton in the open market, and it is without dispute that Roten and Henderson did purchase the cotton in the open market. Such is the effect of the rule announced by our Supreme Courts in Oats v. Dublin National Bank, supra. See also Harding v. San Saba National Bank, Tex.Civ.App., 13 S.W. 2d 121, point bottom page 122. See also Hodge v. Fly, Tex.Civ.App., 105 S.W.2d 778; Knight v. Barton, Tex.Civ.App., 38 S.W.2d 1107, writ ref; Coleman Production Credit Co. v. Mahan, Tex.Civ.App., 168 S.W.2d 903, and cases collated under point 3. See also 8 Texas Digest, Chattel Mortgages, ☞219. In 11 C.J. 624, sec. 339, we find this statement of the rule: "Where the mortgagee expressly or impliedly consents to a sale of the mortgaged property by the mortgagor, he waives his lien, and the purchaser takes the title free from the same, whether or not he knew of the existence of the mortgage, and notwithstanding his want of knowledge when he makes his purchase that such consent has been given." See also, 14 C.J.S., Chattel Mortgages, § 262. In the annotation in 97 A.L.R. 655, we find this statement of the rule: "It seems to be the clear implication of the cases generally that the mortgage-lien waiver resulting from a sale of the mortgaged chattels with the consent of the mortgagee takes effect regardless of whether or not the purchaser knew of the mortgage or of the mortgagee's consent to the sale." The above rules seem to summarize

the view adopted by our Texas courts as to the foregoing factual situation.

Under the views here expressed, all of the other points raised by appellant become immaterial and pass out of the case, and the judgment of the trial court must be affirmed.

Accordingly, the judgment of the trial court is affirmed.