**FIRST NATIONAL BANK OF MISSION,
Texas, Petitioner,**

v.

**Luther THOMAS, d/b/a Thomas Gin
Company, Respondent.**

**No. A–10543.**

Supreme Court of Texas.

· Oct. 13, 1965.

On Rehearing April 6, 1966.

Rehearing Denied May 4, 1966.

Strickland, Wilkins, Hall & Mills, Asa V. Bland, Mission, for petitioner.

Petry & Fitzpatrick, John W. Claybrook, Carrizo Springs, for respondent.

HAMILTON, Justice.

The petitioner, First National Bank of Mission, Texas, instituted this suit to recover of J. M. Warren the amount of principal, interest and attorney's fees due upon a note of $38,465.77. This note was secured by a chattel mortgage executed in favor of petitioner covering the cotton crop to be grown upon 400 acres of land located in Zavala County, Texas. This chattel morgage was also sought to be foreclosed and Luther Thomas, doing business as Thomas Gin Company, was sued for the alleged conversion of 265 bales of cotton allegedly grown by Warren and covered by the chattel mortgage of the petitioner. A jury trial resulted in judgment for the petitioner against respondent for $21,232.02 plus interest, less a credit of $4,243.56 held by the petitioner Bank. Petitioner also obtained a judgment against Warren for $12,-

507.72 together with interest. Respondent recovered $16,988.46 plus interest from Warren.

Respondent alone appealed and the Court of Civil Appeals reversed and rendered judgment in its favor, holding that the petitioner had not met its burden of proving that its mortgagor, J. M. Warren, was the owner of the 265 bales of cotton. That court held that the evidence did not conclusively establish this fact in petitioner's favor and since it was without the benefit of a jury verdict, petitioner Bank was not entitled to a judgment against respondent. Moreover, the Court of Civil Appeals said that the Bank could not recover in any event, since the evidence shows that it gave its permission to Warren to sell the cotton and therefore waived its chattel mortgage lien. 384 S.W.2d 219. We do not agree.

There are two issues that warrant our attention in this case. The first contention centers around whether the Court of Civil Appeals erred in holding that Warren's ownership of the 265 bales of cotton was a disputed fact issue. A second contention concerns whether the evidence shows that Warren, armed with the conditional consent of petitioner to sell the cotton, did in fact give instructions to the respondent to sell the cotton in question, thereby bringing about a waiver of the Bank's chattel mortgage lien.

From our review of the record in this cause, we note the following facts as to the first contention:

Respondent Gin Company's general manager, Mr. Joe Laird, testified that in February, 1958, he and Warren orally agreed that respondent would finance most of Warren's expenses in relation to Warren's cotton crop as they had done each year for several preceding years, provided that there was no chattel mortgage on the crop. By April 11, 1958, respondent had advanced Warren some $1,600 for seed, fertilizer, etc.

On April 11, 1958, petitioner Bank and Warren agreed that he would execute a chattel mortgage on 400 acres of cotton to be grown in the year 1958 and subsequent years. This chattel mortgage was given to secure a $38,465.77 note made by Warren and was recorded in Zavala County on April 14, 1958.

After this the respondent loaned additional sums to Warren, culminating in a total of $21,232.02. The cotton grown on the land produced 265 bales, which were sold by the Gin Company for $37,671.43, the proceeds of which were credited against Warren's debts to respondent Gin Company, with the remainder going to Warren.

In response to the special issues submitted, the jury found that there was actual and constructive knowledge of petitioner's chattel mortgage by the respondent and that petitioner did not consent to the sale of the cotton in question.

Originally Warren owned these 400 acres. He bought and cleared the property in 1951 and in 1954 organized the Four Way Land Company, Inc., which took title to this property in return for 98 shares of its stock. This deed was properly recorded in Zavala County. Warren was the general manager, president and principal stockholder of Four Way. The corporation was formed for the purpose of growing and selling crops, although the evidence shows that it was organized to protect a personal debt of Warren to the Hartford Accident and Indemnity Company for $300,000. Consequently, Warren pledged his stock along with its voting rights to Hartford.

Warren testified as follows:

"Q. How many acres of cotton were you growing that year in 1958?

"A. As I remember, approximately 400 acres.

"Q. Who was in absolute possession of this land from 1954 on through 1958?

"A. I don't know what kind of possession you are talking about. The title was in the name of the Four Way Land

Company. In possession of it and farming it was J. M. Warren.

"Q. Did you farm this land in the years 1951 through 1958?

"A. Yes, sir.

"Q. Did you have an agreement with the Four Way Land Company concerning the use of this land?

"A. Yes, sir.

"Q. Was the agreement ever reduced to writing?

"A. No, sir.

"Q. Was there ever made any minutes or any resolution of the corporation reflecting your right to farm the land?

"A. No, sir."

In addition to Warren's 98 shares, Mr. Cadwallader and his brother owned one share each. Cadwallader in his position as secretary of Four Way gave the following testimony:

"Q. Are there any minutes reflecting the agreement that you had with Mr. Warren that he could stay in possession of the land?

"A. There was no written agreement whatsoever.

"Q. Did the corporation hold title to any of the farm equipment?

"A. No, the corporation simply took a deed to the four sections of land, that is all.

"Q. Did you ever grow or sell fruits— that is, the corporation?

"A. No, sir.

"Q. Vegetables and tobacco?

"A. No, sir.

"Q. Cotton?

"A. The corporation? Not that I know of."

Also Mr. Buescher, petitioner's executive vice-president, testified as follows:

"Q. If you had known, Mr. Buescher, that this cotton and this grain was to be grown on land owned by the Four Way Land Company—

"A. —I just said, 'Warren, are you farming it yourself, Mr. Warren?' and he said, 'Yes.'

"Q. That is as far your inquiry went?

"A. Yes, sir."

The preceding is strengthened by the fact that the respondent treated J. M. Warren as the owner of the cotton crop. All of the Gin Company's invoice sheets, statements, charge slips and the like with regard to this cotton list Warren as the customer. Respondent's general manager, Joe Laird, testifed that the contents of the settlement statement were correct and across the top of it were the words, "In account with J. M. Warren." Mr. Laird also, as a government clerk for the Commodity Credit Corporation during this period, listed Warren on an application for a loan as the "producer." This was done in respondent's office and while it does not bind the Gin Company as such, at least it shows that it was aware of Mr. Warren's position.

Perhaps the most convincing proof that Warren owned the cotton crop and was so treated by the respondent was that in 1955 the respondent took a chattel mortgage on the same property and crop from Warren which was filed of record and certified by the County Clerk. This was after the formation of the Four Way Land Company and the conveyance of the 400 acres to this corporation.

There is no real doubt that Warren was in possession of the cotton, had the use of the land, and was the owner of the crop. The proof is such that, as a matter of law, we hold that the petitioner has shown that Warren owned the cotton in issue. The only "proof", if it could be called such, advanced by the respondent and relied upon

by the Court of Civil Appeals, was the presumption that the owner of the land also owns the crops grown thereon, and the presumption that Warren as president was the proper person to be in possession.

However, with regard to "presumptions" we quote the following:

> " * * * the presumption places upon the party against whom it operates the burden of producing evidence sufficient to justify a finding of the non-existence of the presumed fact * * *. Under this rule where the opponent produces sufficent evidence to justify a finding against the presumed fact the presumption vanishes and the situation is the same as it would have been had no presumption been created." McCormick & Ray's Texas Law of Evidence, pp. 62–63, Sec. 53.

Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 768.

Petitioner came forward here with evidence that the cotton did belong to Warren and not to Four Way. As a result, the presumption as to growing crops disappeared and was of no consequence. There was no factual dispute as to the ownership of the cotton to justify such an issue being submitted to the jury.

Because of the position we take here, we do not deem it necessary to pass on petitioner's other theories concerning the first contention.

The second contention urged by petitioner concerns the action of the Court of Civil Appeals in holding that the Bank waived its chattel mortgage lien by consenting to let Warren sell the cotton. The jury answered that petitioner did not consent to the sale which was made by the respondent.

The petitioner contends that even though Warren had the consent of the Bank to sell the cotton, conditioned upon his bringing the proceeds back to it, Warren did not authorize the respondent Gin Company to sell the cotton. Consequently, there was no waiver of the Bank's chattel mortgage lien.

Respondent's position is that since the Bank gave Warren permission to sell the cotton, provided that he bring back the proceeds to it, as against a purchaser with knowledge of the chattel mortgage but without notice of this conditional power of sale, petitioner has authorized Warren to sell to anyone and has therefore waived its chattel mortgage lien. In other words, respondent contends the consent given to Warren is sufficient in itself to waive the lien of the Bank. Cartwright v. Flatt, 244 S.W.2d 523 (Tex.Civ.App.1951, no writ history); Harding v. San Saba National Bank, 13 S.W.2d 121 (Tex.Civ.App.1929, writ dismissed).

We do not feel that respondent's authorities cited above are in point. In those cases after the conditional consent was given by the mortgagee the mortgagor actually sold the goods covered by the chattel mortgage. In this present controversy there is evidence that Warren, the mortgagor, did not sell the cotton as he was authorized conditionally by the Bank to do, nor did he instruct the Gin Company to sell the 265 bales for him.

There is testimony that Warren was to dispose of the cotton in the above-mentioned manner for the Bank. Certainly the Bank never intended to sell it on its own. Warren told respondent to harvest and gin the cotton, but he testified that he gave the Gin Company no instructions as to the sale of the cotton, and that they had sold the cotton without his knowledge. Respondent acted as a broker for the large farmers in that area and in the past had always consulted with Warren as to the price before they sold his cotton to a buyer. This year, though, Warren testified that this was not done. As soon as the petitioner found out from Warren that the cotton had been sold and the proceeds taken to satisfy the advances made by respondent to Warren, it

**894**

made immediate demand upon respondent Gin Company.

■ The facts, as borne out by this record, indicate that there was no consent given by Warren, the petitioner's agent, to the respondent authorizing the Gin Company to sell without first consulting Warren. Since there is no evidence that any of the Bank's officers or employees ever communicated at any time with respondent, the only testimony for the jury to consider concerned Warren and his dealings with the respondent. The Court of Civil Appeals held that the testimony showed that the bank had authorized Warren conditionally to sell the cotton and that Warren did not testify that he did not authorize the Gin Company to sell the cotton. Warren testified that he gave no instructions to the Gin Company to sell the cotton, and since the Gin Company did not, as it had done for the past five or six years, consult him as to the price before it made the sale, we hold that this is some evidence to support the jury's finding of lack of consent by the petitioner Bank. The Gin Company, by selling the cotton without first consulting Warren, never gave him an opportunity to inform the respondent of his conditional authority of disposal. Therefore, there was no waiver of its chattel mortgage lien by the petitioner.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

POPE, J., not sitting.

ON MOTION FOR REHEARING

HAMILTON, Justice.

The motion for rehearing is granted.

On motion for rehearing it has been pointed out to us that respondent had assigned as a point of error before the Court of Civil Appeals that the jury's answer to Special Issue No. I was against the great weight and preponderance of the evidence.

The holding by the Court of Civil Appeals that there was no evidence to support the jury's finding to Special Issue No. I encompasses a holding that said finding was against the great weight and preponderance of the evidence. This being a fact issue, we are without jurisdiction to pass upon this matter. Therefore, under the authority of Barker v. Coastal Builders, 153 Tex. 540, 271 S.W.2d 798 (1954), we modify our judgment to the extent that we remand the case to the trial court rather than affirm the judgment of the trial court. It is so ordered.